*E-FILED: June 5, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPENDNS, INC., | No. C11-05101 EJD (HRL) |
| Plaintiff, | **ORDER ON DISCOVERY DISPUTE JOINT REPORT NOS. 1 AND 2** |
| v. | |
| SELECT NOTIFICATIONS MEDIA, LLC, | **(Dkts. 93, 94)** |
| Defendant. | |

  Plaintiff OpenDNS, Inc. ("OpenDNS") initiated this patent suit by seeking a declaration of non-infringement against Paxfire, Inc., the original owner of U.S. Patent No. 7,631,101 ("the '101 Patent"). Paxfire, Inc. then assigned the '101 Patent to defendant Select Notifications Media, LLC ("SNM") and the Court granted SNM's motion to substitute itself as a party for Paxfire, Inc. SNM has counterclaimed, accusing OpenDNS of infringing the '101 Patent.

  The '101 Patent relates to the Domain Name System ("DNS") for Internet addressing. The '101 Patent claims a system that redirects requests for domain names that cannot be resolved by the DNS. The '101 Patent has two independent claims, Method Claim 1 and System Claim 8. The claims relate to redirection of Internet traffic, and describe, *inter alia*, different treatment of requests associated with hypertext transfer protocol ("HTTP") and requests that are not associated with HTTP. Both claims require determining if a request for the IP address associated with a domain name is associated with HTTP, and then taking different actions, depending on the result. Both claims include the limitation: "if the request is not associated with HTTP, forwarding to the Internet

user an error response for the request" ("Error Response Limitation"). SNM claims infringement because OpenDNS's system treats HTTP requests differently from non-HTTP requests.

SNM served its Preliminary Infringement Contentions ("PICs") on September 4, 2012. The PICs included screen shots, but, in what both parties concede was an obvious error, the screen shots for the Error Response Limitation that supposedly illustrated a non-HTTP request actually showed an HTTP request. About six hours after the error was called to SNM's attention (by Open DNS's January 4, 2013 mediation brief), SNM served "corrected" PICs, which included new screen shots and a specific reference to the new screen shots in the accompanying text. About five weeks later, Open DNS moved to strike the "corrected" PICs, asserting that the "corrected" PICs amounted to a substantive change in theory. SNM opposed the motion, arguing that the "corrected" PICs simply resolved a clerical error. As a precaution, SNM moved for leave to amend its PICs.

In its opposition to the motion to strike, SNM submitted a declaration from Brent D. Rafferty, the attorney who was responsible for developing the PICs. Rafferty stated that, in compiling the PICs, he worked with a technical consultant. (Declaration of Brent D. Rafferty in Support of SNM's Opposition to OpenDNS's motion to strike amended infringement contentions, Dkt. 64 ("Rafferty Decl."), ¶2.) The consultant performed analysis on the functionality of the accused system using a packet tracing software product known as "Wireshark." (*Id.*) Rafferty stated that he was not familiar with Wireshark, and that he relied on the consultant to operate Wireshark and interpret its results. (*Id.*) According to Rafferty, the mistake of including the wrong screenshots resulted from a mislabeled file. (Rafferty Decl. ¶¶ 4-6.) Rafferty relied on the label of the file, as opposed to its content, because of his unfamiliarity with Wireshark. (*Id.*) "Because I was unfamiliar with Wireshark reports, however, I did not realize that the consultant had mistakenly identified the screenshots showing operation of the system on an HTTP request as related to a 'non-HTTP' request." (*Id.* ¶ 5) He declared that he "made an unfortunate but good faith mistake in relying on the consultant's labeling of the Wireshark report and screenshots as showing the system's operation on a non-HTTP request." (*Id.* ¶ 6.) Rafferty left Farney Daniels PC ("Farney Daniels"), the law firm that represents SNM, the day after the PICs were served on OpenDNS, and did not look at the charts again or inform anyone of the mistake.

The Court denied OpenDNS's motion to strike and granted SNM's motion for leave to amend, finding that the inclusion of the incorrect screen shots appeared to be an honest mistake and that OpenDNS would not be prejudiced by the amendment. During briefing of the motion to strike and the motion for leave to amend, OpenDNS issued two non-party subpoenas. A dispute over these subpoenas forms the basis of Discovery Dispute Joint Report #1 ("DDJR #1) and Discovery Dispute Joint Report #2 ("DDJR #2).

DDJR 1 concerns a subpoena that OpenDNS served on Rafferty, who had already left Farney Daniels when it was served. The subpoena requires him to appear for a deposition, and requests production of communications and documents related to the preparation of SNM's PICs, as well as the connection, if any, between this lawsuit and the circumstances under which Rafferty left Farney Daniels. DDJR 2 concerns a subpoena that OpenDNS served on Farney Daniels itself. This subpoena requests production of communications and documents related to the preparation of SNM's preliminary infringement contentions, as well as the connection, if any, between this case and the circumstances under which Rafferty left the firm.

Rafferty, Farney Daniels, and SNM ask the Court to quash the subpoenas on the grounds that they seek discovery that is irrelevant and unduly burdensome, that the information sought is duplicative of the declaration already submitted by Rafferty, and that the subpoenas seek work product, privileged communications, and private information. For its part, OpenDNS argues that any privilege or work product protection has been waived, and that the information sought by the subpoenas is necessary to understand what OpenDNS characterizes as an inconsistent story.

Under Federal Rule of Civil Procedure 45(c)(1), a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). The court "must quash or modify" a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation," unless "they are otherwise discoverable under

3

Rule 26(b)(1)," and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

A non-party subject to a subpoena may object to a subpoena on the basis of lack of relevance. "The relevance of the subpoenaed information has an important bearing upon the determination of a claim that a subpoena *duces tecum* is unreasonable or oppressive, as well as to a claim of confidentiality for the material sought to be produced, and that a sufficient showing of need for the information will suffice to overcome such objections." *Wood v. Vista Manor Nursing Center*, No. C 06-01682-JW (PVT), 2007 WL 832933, *3 (N.D. Cal. March 16, 2007) (internal citations and quotation marks omitted).

Having considered the competing contentions of Rafferty, Farney Daniels, and the parties, the court finds it appropriate to quash the subpoenas. The subpoenas impose an undue burden on the third parties, especially in light of the tenuous relevancy of the information sought by them. *See Wood*, 2007 WL 832933 at *3; *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995). The core issues of this patent infringement action are infringement, damages, and validity, whereas the information sought by the subpoenas concerns a satellite issue that has already been resolved. Further, most of the information sought by the subpoenas appears to be work prepared in anticipation of litigation. OpenDNS has not shown a "substantial need" for this information, nor has SNM waived the protection afforded to work prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3)(A). Accordingly, the Court quashes OpenDNS's subpoenas to Rafferty and Farney Daniels.

**IT IS SO ORDERED.**

Dated: June 5, 2013

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

4

**C11-05101 HRL Order will be electronically mailed to:**

Bryan A. Kohm    bkohm@fenwick.com, anolen@fenwick.com

Erin Anne Simon    esimon@fenwick.com, rpelayo@fenwick.com

Jennifer Hayes    jenhayes@nixonpeabody.com, prwilson@nixonpeabody.com, sf.managing.clerk@nixonpeabody.com, wanthony@nixonpeabody.com

Jia-geng Lu    jlu@farneydaniels.com, AYu@farneydaniels.com

Jonathan Daniel Baker    jbaker@farneydaniels.com, FDLitSupport@farneydaniels.com, MGoss@farneydaniels.com

Maxwell James Goss    mgoss@farneydaniels.com

Michael John Sacksteder    msacksteder@fenwick.com, gdunlap@fenwick.com, jphan@fenwick.com

Robert Edward Krebs    rkrebs@nixonpeabody.com, sf.managing.clerk@nixonpeabody.com

Ronald Frank Lopez    rflopez@nixonpeabody.com, kkappler@nixonpeabody.com

Steven R. Daniels    SDaniels@farneydaniels.com

Steven Robert Daniels    sdaniels@farneydaniels.com, FDLitSupport@farneydaniels.com, jlu@farneydaniels.com, lsun@farneydaniels.com, mjacob@farneydaniels.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**